UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Byron Adams (A-60952), | ( | |
| Plaintiff, | ( | No. 3:18-cv-50141 |
| v. | ( | |
| | ( | Judge Iain D. Johnston |
| Emmanuel Egbe, | ( | |
| Defendant. | ( | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Byron Adams experienced continued vomiting beginning around the time he had cataract surgery in February 2018, and after being taken to the Emergency Room and ultimately admitted to the hospital on March 5, 2018, he was diagnosed with grade D esophagitis and acute kidney injury. Mr. Adams contends that Defendant Emmanuel Egbe, a Correctional Medical Technician at Stateville Correctional Center, was deliberately indifferent to his serious medical needs when he delayed referring Mr. Adams for treatment. Mr. Egbe seeks summary judgment, arguing that he was acting within the scope of his duties and that not providing the treatment Mr. Adams wanted does rise to the level of deliberate indifference. For the reasons that follow, Defendant's motion for summary judgment [94] is denied. The motion for summary judgment should never have been filed.

### **Background**

While an inmate at Stateville Correctional Center in January 2018, Dr. Elazegui had concerns about Mr. Adams's renal function. Dkt. 99, ¶ 10.[1] In early February 2018, Dr. Elazegui

---

[1] The facts are drawn from the parties' LR 56.1 statements and responses. Dkts. 95, 98, 99.

1

noted Mr. Adams's chronic kidney disease, which could cause vomiting. *Id.* at ¶ 11. Mr. Adams began vomiting in mid-February 2018. *Id.* at ¶ 27. On February 19, 2018, Mr. Adams was sent on a medical writ to University of Illinois at Chicago ("UIC") Hospital for cataract surgery. Dkt. 98, ¶ 1. He returned to Stateville later that day and was scheduled for a follow-up appointment at UIC on February 20. *Id.* at ¶ 2. A medical specialist referral report signed by UIC Dr. Wyatt Messenger on February 20, 2018, provided post-operative care instructions including a "medical lay-in," two types of eye drops to be administered by a nurse four times a day, instruction to sleep with a shield, and the note "if continued vomiting please be seen w/ in-house doc." Dkt. 95-2, at 4.[2] Dr. Elazegui approved these recommendations and signed the same document on February 22. *Id.* Also on February 20, 2018, after Mr. Adams returned from his follow-up at UIC, he was seen by Dr. Elazegui and Nurse Garcia; he was again seen by Dr. Elazegui at Stateville on February 22. Dkt. 98, ¶¶ 4-5. Mr. Egbe, who is also a Licensed Practical Nurse ("LPN") in Illinois, saw Mr. Adams vomit on at least one occasion in February 2018. Dkt. 99, ¶ 27.

On February 28, 2018, Mr. Adams was scheduled to visit the UIC eye clinic, but he refused to go. Dkt. 98, ¶ 7. That day, Mr. Adams told LPN Matakiewicz for the first time that the eye drops he was prescribed following his cataract surgery were causing him to vomit. *Id.* at ¶ 8. On March 1, 2018, Mr. Adams went to UIC on a medical writ for his cataract follow-up appointment. *Id.* at ¶ 9. On March 4, 2018, Mr. Egbe, a Correctional Medical Technician

---

[2] Defendant offers as a fact that Dr. Elazegui did not document any symptoms like vomiting on February 20 or 22. *See* Dkt. 95, ¶¶ 5-6. Yet the medical records Defendant offered as an exhibit indicate a symptom of "continued vomiting" on February 20, and Dr. Elazegui signed-off on this document two days later. Defendant's fact statements at paragraphs 5 and 6 will only be considered to the effect that Dr. Elazegui did not *personally* document any vomiting or other symptoms of esophagitis. Based on the document from Defendant's Exhibit 2 (Dkt. 95-2, at 4),Mr. Adams's "continued vomiting" was documented in the medical record as early as February 22, 2018, when Dr. Elazegui approved Dr. Messenger's referral report. There is no genuine issue of fact as to whether his vomiting was known and documented at this point.

2

("CMT"), was aware of Mr. Adams's kidney problem. Dkt. 99, ¶¶ 2, 33. On that same day, Mr. Adams asked Mr. Egbe to take him to health care, but he did not, and as a result, Mr. Adams laid in bed, "steadily throwing up." *Id.* at ¶ 34. Mr. Adams told Mr. Egbe that he had been vomiting and held up clear plastic garbage bag that he had been using, filled with his vomit. *Id.* at ¶¶ 29-30. Mr. Egbe saw the bag, and the vomit inside was "the color of coffee grounds." *Id.* at ¶¶ 31-32. A person presenting with coffee ground emesis (vomit) would indicate some kind of blood inside the person's stomach. *Id.* at ¶¶ 6, 23. Gastritis could cause coffee ground emesis. *Id.* at ¶ 25. If vomiting is not addressed and a person is dehydrated, it leads to kidney damage. *Id.* at ¶ 12. Mr. Egbe was trained that if an inmate had coffee ground emesis, he was to take that person to Stateville's health care immediately. *Id.* at ¶ 7. As a CMT, Mr. Egbe was the person who makes the determination to take a prisoner to healthcare. *Id.* at ¶¶ 4, 9. After Mr. Egbe did not take Mr. Adams to health care for his coffee ground emesis, Mr. Adams was in pain and could not ask for help. *Id.* at 35.

On March 5, 2018, a nurse reported to Dr. Elazegui that Mr. Adams had coffee ground emesis. Dkt. 99, ¶ 13. Dr. Elazegui did not see the vomit for himself, but ordered Mr. Adams transferred to the Emergency Room at Saint Joseph Hospital. *Id.* Medical records from the hospital indicate the presence of coffee ground emesis, indicating upper gastrointestinal bleeding. *Id.* at ¶ 15. Mr. Adams was transferred from Saint Joseph Hospital to UIC. *Id.* at ¶ 14. The UIC medical records show high sodium levels "consistent with constant vomiting" and a gastrointestinal bleed. *Id.* UIC admitted Mr. Adams for abdominal pain, intractable nausea/vomiting and noted an acute kidney injury. *Id.* at ¶ 17. UIC determined that Mr. Adams had grade D esophagitis, a type of injury to the esophagus, and D is the worst grade. *Id.* at ¶¶ 18-19, 26. Esophagitis manifests itself with pain. *Id.* at ¶ 21.

At this point, the Court must address the consequences of a party's failure to comply with Local Rule 56.1. Local Rule 56.1(a) requires a party seeking summary judgment to file an accompanying statement of facts, to which the party opposing summary judgment must respond if it disputes any. Then, the party opposing summary judgment must file its own statement with numbered paragraphs to assert any additional facts that require the denial of summary judgment, and the movant may then file a response. See LR 56.1(b)(3), (d)(2), (c)(2). The consequence of the failure to do so is dire: "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). The movant's failure to controvert the opposing party's statements will likewise result in the admission of those facts. *See Ruderman v. Kim*, No. 19-cv-50205, 2022 U.S. Dist. LEXIS 10465, at *2-3 (N.D. Ill. Jan. 20, 2022). Here, Defendant failed to reply to Plaintiff's well-supported statement of additional facts. Moreover, despite being given two extensions to file a reply brief to Plaintiff's memorandum in response, Defendant failed to do so. As a result, for the purposes of this motion, all of Plaintiff's well-supported statements of fact are deemed admitted.

## Analysis

On summary judgment, the moving party bears the burden to show that there are no genuine disputes as to any material fact and that judgment is proper as a matter of law. A party opposing summary judgment must then proffer specific evidence to show a genuine issue of fact for trial. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists if a reasonable jury could return a verdict for the non-movant when viewing the record and all reasonable inferences drawn from it in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court must construe the "evidence and all reasonable inferences in favor

4

of the party against whom the motion under consideration is made." *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). The party opposing summary judgment "is entitled to the benefit of all favorable inferences that can reasonably be drawn from the underlying facts, but not every conceivable inference." *De Valk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987). Summary judgment is appropriate only when the court determines that "no jury could reasonably find in the nonmoving party's favor." *Blasius v. Angel Auto, Inc.*, 839 F.3d 639, 644 (7th Cir. 2016).

For an Eighth Amendment claim of deliberate indifference in a prison medical context, a plaintiff must show that: (1) he suffered from an objectively serious medical condition; and (2) defendant prison official was deliberately indifferent to his condition so that defendant "actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Here, Defendant does not dispute the seriousness of Plaintiff's medical condition, so the Court focuses only on the second prong of this inquiry.

To determine whether a prison official's actions or omissions constitute deliberate indifference, courts look to the official's subjective state of mind. *Petties*, 836 F.3d at 728. Although deliberate indifference does not require a showing of intent to harm, it does require more than recklessness, gross negligence, or even malpractice. *Id.*; *Rosario v. Brawn,* 670 F.3d 816, 821-22 (7th Cir. 2012) (explaining that the standard approaches "total unconcern" for an inmate's welfare). A plaintiff claiming deliberate indifference "must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Petties*, 836 F.3d at 728. This is a high hurdle. *Rosario*, 670 F.3d at 821. For example, "blatant disregard for medical standards could support a finding of mere medical malpractice, or it could rise to the level of

5

deliberate indifference, depending on the circumstances." *Petties*, 836 F.3d at 729. "A prison official may evidence deliberate indifference by failing to treat or delaying treatment of a serious medical need." *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996). However, "an inadvertent failure to provide adequate medical care" is not enough to rise to the level of deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). And evidence of a plaintiff's diagnosis and treatment alone is often insufficient without other circumstantial evidence. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *Petties*, 836 F.3d at 729. Health care protocols can provide "circumstantial evidence that a prison health care gatekeeper knew of a substantial risk of serious harm." *Id.* (quoting *Mata v. Satz*, 427 F.3d 745, 757 (10th Cir. 2005).

Here, the facts relevant to the claim of deliberate indifference are undisputed. Mr. Egbe's job as a CMT was to decide whether to send Mr. Adams to the health care unit. Mr. Egbe was trained to take an inmate to health care immediately if he had coffee ground emesis. Mr. Egbe did not immediately take Mr. Adams, who he knew to have a kidney issue, to health care on March 4, 2018, when he witnessed Mr. Adams holding a bag full of his own coffee ground vomit asking to be taken to the health care unit. When Mr. Adams eventually received medical attention from a hospital on March 5, 2018, his abdominal pain, nausea, vomiting, gastrointestinal bleed, and acute kidney injury was documented. These undisputed facts demonstrate that Mr. Egbe had actual knowledge of a substantial risk of harm to Mr. Adams— and that Mr. Egbe blatantly disregarded that risk. The undisputed facts here do not show an inadvertent delay. Defendant's arguments that none of the other staff who saw Mr. Adams documented any vomiting, that Mr. Adams was under the continuous care of more specialized staff, and that the allegations are misplaced because Mr. Adams did not get the treatment he wanted are unpersuasive and miss the mark entirely. It is an undisputed fact that Mr. Egbe knew

6

of the serious medical condition Mr. Adams was suffering from and did not follow the established protocol to get him medical attention.

On these undisputed facts, a reasonable jury could find that Mr. Egbe was deliberately indifferent to Mr. Adams's serious medical condition. The Court denies Defendant's motion for summary judgment [94]. The motion for summary judgment should never have been filed. The failure to file a reply brief after being given two extensions to do so is strong evidence of the lack of merit of the motion. All would have been better served if the motion would not have been filed in the first place. At least after the response was filed, Defendant should have withdrawn the motion after steadfastly refusing to file the reply.

The parties are referred to Magistrate Judge Schneider to discuss whether a settlement conference would be a useful endeavor. If the parties are not interested in a settlement conference, then they should prepare a final pretrial order per Magistrate Judge Schneider's direction.


Date:  March 21, 2022          By:  _____
                                    IAIN D. JOHNSTON
                                    United States District Judge